**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 30 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

STANISLAW KULIK,

     Defendant-Appellant.

No. 97-7092

(D.C. No. CR-97-11-01)

(E.D. Okla.)

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ALEXSANDER SMEKTALA,

     Defendant-Appellant.

No. 97-7094

(D.C. No. CR-97-11-02)

(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **BRORBY**, and **LUCERO**, Circuit Judges.

---

[*]   This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On February 7, 1997, Defendant Alexsander Smektala, accompanied by Defendant Stanislaw Kulik, was driving his white cab-over tractor/trailer rig north on the Indian Nation Turnpike near McAlester, Oklahoma when a van traveling a short distance ahead of his rig attempted to make a u-turn. Smektala swerved to avoid a collision. Unable to maintain control of his rig, Smektala ran off the road and the rig overturned in the ditch. On impact, the rig's trailer broke open and numerous bales of marijuana along with several bags of onions spilled out. The total weight of the marijuana which authorities seized from the scene exceeded 11,000 pounds.

A grand jury indicted Defendants Kulik and Smektala together on one count of possession with intent to distribute in excess of 1000 kilograms of marijuana and one count of conspiracy to commit the same in respective violation of 21 U.S.C. §§ 841 & 846. Following a joint trial, a jury found Defendants guilty on both counts. The district court sentenced each Defendant to two concurrent terms of 188 months imprisonment. Defendants appeal their convictions. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

On appeal, both Defendants claim the district court improperly admitted into evidence eleven samples of marijuana taken from the bales which spilled from Smektala's truck. According to Defendants, the government failed to authenticate the samples by establishing a proper chain of custody prior to their admission. Additionally, Defendants raise several separate claims. Kulik claims the district court improperly admitted

2

prejudicial character and co-conspirator hearsay testimony against him. Smektala claims the district court improperly admitted prejudicial testimony regarding a canine alert on Kulik's truck; improperly failed to sever the trials, or in the alternative, give the jury limiting instructions on evidence he claims pertained solely to his co-defendant; and improperly informed the jurors that an appellate court would carefully review their verdict for error. Lastly, Smektala claims the evidence against him on the conspiracy count was insufficient. We address Defendants' contentions in turn.

I.

Both Defendants claim that the district court erred when, without a sufficient showing of the chain of custody, it admitted into evidence eleven samples of the marijuana, Government exhibits 44-54, seized from Smektala's truck. We review the district court's ruling on the admission of real evidence for abuse of discretion. United States v. Washington, 11 F.3d 1510, 1514 (10th Cir. 1993). Under Fed. R. Evid. 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

When evidence such as a controlled substance is not readily identifiable and is susceptible to alteration by tampering or contamination, courts require a foundation "entailing a chain of custody of the item with sufficient completeness to render it improbable that the original item has either been exchanged with another or been

3

contaminated or tampered with." United States v. Johnson, 977 F.2d 1360, 1367 (10th Cir. 1992) (internal quotations omitted) (emphasis in original). The chain of custody, however, need not be perfect for the evidence to be admissible. If, after considering the nature of the evidence and the surrounding circumstances, including presentation, custody, and probability of tampering or alteration, the district court determines that the evidence is substantially in the same condition as when the crime was committed, the court may admit it. United States v. Cardenas, 864 F.2d 1528, 1531 (10th Cir. 1989). Once the court properly decides that the evidence is admissible, "deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence." United States v. Brandon, 847 F.2d 625, 630 (10th Cir. 1988).

In this case, DEA Agent Waters testified that he took eleven random samples from the marijuana seized from Smektala's truck and labeled them A thru K. He then sent them to the DEA lab in Dallas for analysis. The agent testified that the samples, which the Government introduced at trial, were in the same condition as when he took them except that the DEA chemist had opened the bottom of the sealed bags containing the samples and resealed them after analysis. DEA chemist Coffey also testified that the samples at trial were in the same condition as when he received them at and returned them from the lab.

Based upon our review of the record, we conclude that the district court did not

4

abuse its discretion in admitting the marijuana samples into evidence because the Government presented a sufficient chain of custody to justify their admission. While Defendants raised some doubts about the reliability of the evidence at trial, namely the weight differential between the samples when they were sent to and returned from the lab, and the discrepancy of the certified mail number in the DEA reports, we cannot agree that such problems required exclusion of the samples at trial. The district court properly found that the samples had not been altered in any material respect. Thus, any problems in the chain of custody went to the weight of the evidence, not its admissibility.

## II.

Defendant Kulik next claims the district court erred when it permitted a Government witness to testify regarding Kulik's veracity and his listing on the Government's Narcotics and Dangerous Drugs Information System (NADIS). According to Kulik, the testimony violated both Fed. R. Evid. 402 because it was irrelevant, and Fed. R. Evid. 404(b) because it reflected upon his character. Because Kulik did not object to the introduction of this testimony at trial, however, we review it only for plain error. Fed. R. Crim. P. 52(b). Absent a timely objection at trial, an alleged evidentiary error is waived "except when it constitutes plain error resulting in manifest injustice." United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir. 1992).

In this case, DEA Agent Wolf testified that Kulik was an independent trucker who worked part time for Sun Eagle Transport out of Chicago. On cross-examination,

5

Smektala's counsel asked the agent if he had obtained information on Kulik through NADIS. The agent answered yes. The Government objected to the question as outside the scope of direct examination, but the district court overruled the objection. We find nothing in this line of testimony, which the Government tried to preclude, that resulted in a manifest injustice. Nothing in Agent Wolf's testimony indicated that Kulik personally had a NADIS number. Rather, the agent's testimony inferred that he obtained information about Kulik through Sun Eagle Transport which did have a NADIS number.

Similarly, we find nothing improper regarding the Government's inquiry of Agent Wolf on redirect examination about Kulik's truthfulness because Kulik's counsel brought his client's truthfulness into question on cross-examination. Counsel asked Agent Wolf if he thought Kulik was telling the truth when Kulik told the agent that he was an independent trucker. Agent Wolf stated that was what Kulik told him. The government's question on redirect examination related directly to the opinion of Agent Wolf into which Kulik's counsel previously had inquired. Because Kulik's counsel solicited Agent Wolf's opinion about Kulik's truthfulness, surely the Government could inquire as to the same on redirect examination. See Fed. R. Evid. 404(a) & 405(a).

III.

Defendant Kulik also claims the district court erred when it admitted into evidence against him statements of his purported co-conspirators. Under Fed. R. Evid. 801(d)(2)(E), a statement made by a co-conspirator of a party may be admissible as

6

non-hearsay.  Under Rule 801(d)(2)(E), statements of a defendant's alleged co-conspirators may be admitted over a hearsay objection if the district court finds by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy.  United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997).  We review a decision of the district court to admit evidence under Rule 801(d)(2)(E) for an abuse of discretion.  United States v. Wolf, 839 F.2d 1387, 1393 (10th Cir. 1988).

Based on the testimony of Deputy Sheriff Fullbright and Jorge Ruiz, the district court overruled Kulik's objection and allowed the Government to introduce testimony concerning an alleged conspiracy between Kulik and three unindicted co-conspirators.  Deputy Fullbright testified that in September 1996, he observed the four men over a period of days in the Houston, Texas area preparing for the arrival of a shipment of drugs.  Ruiz testified that he allowed the men to park a trailer at his home while they waited for a shipment of marijuana.  Ruiz also agreed to allow the men to load the marijuana into the trailer's false compartment while the trailer was still at his residence. Although the marijuana never arrived while the trailer was at Ruiz' residence, the testimony of both Deputy Fullbright and Ruiz clearly established Kulik's participation in a conspiracy to possess and transport marijuana.  Accordingly, we conclude the district court did not abuse its discretion in admitting this testimony.

## IV.

In addition to joining Kulik's chain of custody argument, Defendant Smektala claims the district court erred in admitting testimony regarding a canine alert on Kulik's truck as unduly prejudicial. See Fed. R. Evid. 403. We review a defendant's challenge to the admissibility of witness testimony under Rule 403 for an abuse of discretion. United States v. Reddeck, 22 F.3d 1504, 1508 (10th Cir. 1994).

The evidence revealed that Kulik left his truck and trailer at a repair shop in San Antonio, Texas so that he could join Smektala for the trip to Chicago. Prior to leaving his truck, employees at the repair shop witnessed Kulik and a man with a beard in a remote area near the shop moving "a load" from Kulik's trailer to the other man's trailer. After the Defendants' accident, San Antonio Police Officer Villareal performed a search of Kulik's trailer with a dog. Although the trailer was empty, the dog alerted for an illegal substance near the middle of the trailer. The officer also located evidence of cocaine in the cab area of Kulik's truck.

Prior to trial, the Government agreed not to introduce evidence of the cocaine, but made no such agreement regarding the dog alert on Kulik's trailer because such evidence supported the reasonable inference that Kulik and Smektala had moved the marijuana from Kulik's trailer into Smektala's trailer before journeying north. The evidence was certainly relevant to the Government's theory of the case and the district court did not abuse its discretion in admitting it.

8

V.

Defendant Smektala next claims the district court erred in failing to sever his trial from Kulik's or, in the alternative, erred in failing to provide the jury with limiting instructions regarding evidence which he claims pertained solely to his co-defendant. Because there is a "preference in the federal system for joint trials of defendants who are indicted together," Zafiro v. United States, 506 U.S. 534, 537 (1993), we review the district court's denial of a severance motion under Fed. R. Crim. P. 14 only for an abuse of discretion. United States v. Durham, 139 F.3d 1325, 1333 (10th Cir. 1998), petition for cert. filed June 22, 1998. "[T]he burden on defendant to show an abuse of discretion in this context is a difficult one." United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997) (internal quotations omitted).

The district court's decision to deny Smektala's motion for severance suggests the court determined that the possible prejudice of a joint trial did not outweigh the expense and inconvenience of separate trials. Nothing Smektala has presented convinces us this decision constituted an abuse of discretion. The evidence against Smektala on the possession count was overwhelming, and as we discuss infra, the evidence on the conspiracy count was more than sufficient. To the extent that some of the proof of a conspiracy against Kulik would not have been admitted against Smektala had he been tried alone, Smektala can do no more than speculate that the jury may have inferred his guilt from this evidence. "Such conclusory 'spillover' claims alone do not warrant

9

severance so long as there is [otherwise] sufficient evidence in the record" to support the conviction. Durham, 139 F.3d at 1334.

To be sure, the district court could have given a limiting instruction to the jury concerning the evidence about which Smektala complains. Smektala, however, did not tender such an instruction as part of the jury charge. Rather, when the district court asked if Smektala had any objection to the jury instructions, he responded no. Any objection to error that is not timely raised in the district court is normally forfeited unless the error is obvious and prejudicial. United States v. Rodriguez-Aguirre, 108 F.3d 1228, 1235 (10th Cir. 1997). For an error to be prejudicial means that in most cases, "it must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993). Viewing the evidence presented, we are unable to conclude that the failure to give a limiting instruction affected the outcome of the trial or substantially prejudiced Smektala.

## VI.

Defendant Smektala also claims that the district court improperly informed the jury that an appellate court would review their verdict for error. What the district judge actually did, however, was to explain to the jury that his evidentiary rulings would be reviewed by an appellate court. The judge then concluded by stating, "I take great comfort in the fact that I'm being reviewed, and you ought to, too, and agree with my rulings and go ahead."

A district court's comments to a jury about the possibility of appeal are improper because they tend to shift the jury's sense of responsibility to the appellate court. See United States v. Baker, 63 F.3d 1478, 1497-98 (9th Cir. 1995). In this case, however, a review of the judge's comments indicates that they were directed towards review of his rulings, not the jury's. Moreover, the judge instructed the jurors that they were the sole and final judges of the facts. While the district court's discussion of the appellate process may have been unwise, under these circumstances we cannot conclude that such discussion was reversible error.

## VII.

Finally, Defendant Smektala challenges the sufficiency of the evidence against him on the conspiracy count. In reviewing a challenge to the sufficiency of the evidence, we review the record de novo and ask whether the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–viewed in a light most favorable to the government, is such that a reasonable jury could find defendant guilty of all elements of the crime beyond a reasonable doubt. United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996).

To obtain a conviction under the drug conspiracy statute, 18 U.S.C. § 846, the government need not prove an overt act. United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994). Instead, the government must prove that "the defendant knew at least the essential objectives of the conspiracy and knowingly and voluntarily became a part of

11

it." Id. As we recently stated in United States v. Johnston, ___ F.3d ___, ___, 1998 WL 293323 at *2 (10th Cir. 1998):

> The jury may infer an agreement constituting a conspiracy [under § 846] from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose. Furthermore, the jury may presume that a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy. The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence exists to establish the defendant's participation beyond a reasonable doubt.

(internal citations and quotations omitted).

In this case, the most damaging evidence against Smektala was the fact that he owned and drove the truck which was hauling a trailer containing more than 11,000 pounds of marijuana. Both Smektala and his passenger Kulik were Polish immigrants from the Chicago area employed as truckers. In addition, Smektala indicated to an officer at the scene of the accident that he had left Chicago around February 4 in route to Texas to pick up a load of onions. Smektala's log book, however, showed down time in south Texas from February 2 at 6:15 a.m. until February 6 at 4:15 p.m., just one day before the accident. From this evidence the jury could draw the reasonable inference that Smektala was waiting in Texas for the marijuana.

The evidence further indicated that a man named Alex from Central States Trucking, presumably Alex Smektala, picked up a load of onions in south Texas during the early evening of February 5. Sun Eagle Transport owned both Smektala's and Kulik's trailers. Employees of the repair shop in San Antonio at which Kulik left his truck and

12

trailer further testified that around 11:30 p.m. on February 6, Kulik and a man with a beard were at a remote area near the west side of the shop moving the load from Kulik's trailer into another trailer which matched the description of the trailer on Smektala's truck. The trailers were back to back, door to door. The two men left for Chicago together although the repairs to Kulik's truck were to take no more than five hours. Numerous witnesses at the scene of the accident described Smektala as having a beard.

We believe the jury could reasonably infer from this evidence, albeit much of it circumstantial, that Smektala was part of a conspiracy along with Kulik to possess the marijuana in his trailer with an intent to distribute it once he arrived in Chicago. Admittedly, the evidence against Smektala was not as strong as that against Kulik, but nevertheless sufficient to establish his participation in the conspiracy beyond a reasonable doubt. Accordingly, the district court did not err in denying Smektala's Fed. R. Crim. P. 29 motion for a judgment of acquittal.

For the foregoing reasons, the judgments of the district court are AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge

13